*975 This civilian pay case is before the court on defendant’s motion for summary judgment. Defendant contends there are no material facts that need to be resolved. We cannot agree. Defendant’s motion is denied, and the case is remanded to the trial division for further proceedings.
Plaintiff, Dr. Gary L. Pearson, was a veterinarian employed by the United States Fish and Wildlife Service (USF&WS) at the North Prairie Wildlife Research Center (NPWRC). Plaintiff was removed from his position because he was unwilling to accept a reassignment to Madison, Wisconsin. Plaintiff contends that this reassignment was motivated by a desire on the part of his superiors to remove him from North Dakota because of his environmental activism as a private citizen.
After removal, plaintiff appealed to the United States Civil Service Commission, Federal Employee Appeals Authority (FEAA). On August 5, 1976, the appeals officer upheld the agency action against plaintiff. On January 21, 1977, the United States Civil Service Commission Appeals Review Board declined to reopen or reconsider the decision of the hearing officer.
While the Supreme Court has protected civil service employees on first amendment grounds against removal by supervisors who differ in their opinions,[1] it has never held that such protections are absolute. Reasonable orders to cease and desist from pronouncements that sufficiently detract from agency missions are acceptable. Here, however, confronted with pronouncements by Dr. Pearson that apparently did not, to the least of it, further the agency mission and that aroused the opposition of a powerful senator, who had the impression that the agency office itself was the focus of opposition to his program, the agency never boldly said "cease and desist” and apparently never acted as if it had any such power. Instead, the file reflects a long search for a new duty station for Dr. Pearson which might be sufficiently far distant from North Dakota. Defendant before us never has asserted that its agency has any rights with respect to Dr. Pearson’s pronouncements, so for purposes of this case it must be assumed to have *976 none. The pronouncements we must deem as absolutely protected, though we have never even seen their texts. Instead of forthrightly putting the matter before us for a Pickering-type balancing test, defendant asks us to believe that correspondence with Senator Milton Young, in its files, and repeated references that connect Dr. Pearson’s transfer with Senator Young’s unhappiness, all are consistent with a complete separation of the Senator Young matter from the various urgent calls for public service by Dr. Pearson in places where he would be inaudible in North Dakota. Such conclusions will require findings of fact, based on zealous inquiry.
After hearing oral arguments, numerous questions remain as to what are the material facts. For example, plaintiffs private environmental activities resulted in Senator Young’s displeasure. This displeasure was communicated to Harvey Nelson, plaintiffs superior. The following questions were raised concerning the communications between Senator Young and Harvey Nelson about plaintiff and were never definitely resolved:
1. Did Senator Young indicate to Harvey Nelson that he was responsible for appropriations to the USF&WS in North Dakota, and because of this he felt responsible to oversee the activities of its employees?
2. Plaintiff states that the appeals officer for the FEAA determined that Nelson’s proposed transfer of plaintiff, as a part of the USF&WS effort to establish a national wildlife disease center, was motivated by Nelson’s desire to remove plaintiff, from North Dakota on account of his private environmental activities and the irritation this caused Senator Young. Is this a fact? Did Nelson, in early 1974, convey personally or in writing to USF&WS officials having responsibility for plaintiffs potential transfer, an explicit or implicit message that transferring Dr. Pearson would end his environmental activities and thus placate Senator Young?
3. Defendant alleges that Dr. Putz and Dr. Hester directed plaintiffs transfer without regard for Senator Young’s displeasure concerning Dr. Pearson’s private environmental activities. Plaintiff contends that Dr. Putz and Dr. Hester ordered his transfer so that, upon the refusal of plaintiff to transfer, Dr. Pearson could be *977 removed from the service. Did Dr. Putz and Dr. Hester direct plaintiffs transfer to Madison, Wisconsin, knowing that Dr. Pearson would be unable to accept this transfer without further information about the nature of the work at Madison? Did Hester and Putz expect plaintiff to resign? Did they fail in any respect to observe the procedural rules of their own agency in removing plaintiff?
4. Upon plaintiffs request for information concerning the proposed position in Madison, Wisconsin, did Hester or any other member of the agency refuse or tacitly refuse to give plaintiff such information? Was the information requested by plaintiff available and, if so, did plaintiff already have the information requested by him?
The resolution of these questions should shed light on whether plaintiffs first amendment rights were violated.
Questions pertaining to plaintiffs burden of proof, at the administrative hearing, also remain in doubt.
1. Upon removal, Dr. Pearson appealed to the FEAA. The appeals officer found that Harvey Nelson’s recommendation to transfer plaintiff was improperly motivated. Did the appeals officer affirm the agency’s removal of Dr. Pearson, notwithstanding the above finding, on the basis plaintiff was unable to prove that decision to transfer, made by other agency officials, was principally motivated by Pearson’s environmental activities?
2. Did the appeals officer require that plaintiff, as a condition of a successful appeal, not only prove that the primary recommendation, upon which each deci-sionmaker relied, was improperly motivated, but that each of the other officers involved in the decision was himself motivated to transfer plaintiff because of his environmental activities?
If this burden of proof was as heavy as plaintiff alleges, such requirement appears to be contra to decisions of the United States Supreme Court.[2]
Other discrepancies as to the material facts appear. On September 10, 1976, plaintiff filed a request for reopening and reconsideration of the earlier decision of the FEAA. Did the United States Civil Service Commission Appeals *978 Review Board refuse to review new and material evidence that was not readily available when the decision of the hearing officer was issued?
Beyond the scope of the above issues before the FEAA and the Appeals Review Board, the briefs submitted by the parties also present puzzling questions.
1. Plaintiff alleges that he could not obtain any information about the position he was supposed to fill in Madison, Wisconsin. Defendant alleges that the transfer was not a reduction in grade, step, or level of performance. Could plaintiff have known that this transfer was not a demotion if he could not secure any information about the job?
2. Plaintiff contends that the earlier proposed transfer to Bear River, Utah, and his subsequent proposed transfer to Madison,Wisconsin, were related. Defendant first contended that Dr. Pearson’s transfer to Madison, Wisconsin, was the culmination of decisions that began in 1972. Defendant now contends that the proposed transfer of plaintiff to Bear River had no bearing on his transfer to Madison. What is the relationship, if any, of these two proposed transfers?
3. Defendant alleges that Dr. Pearson was transferred to Madison, Wisconsin, for the efficiency of the agency. Defendant indicates that Dr. Friend had a great need for Dr. Pearson in Madison, and thus it was obvious that plaintiffs transfer was not motivated by a desire to get Dr. Pearson out of North Dakota. Plaintiff alleges that Dr. Friend was appointed for the sole purpose of picking a geographic site for the National Wildlife Disease Control Center, thiit Friend was in no position to make a recommendation with respect to Dr. Pearson and that Dr. Putz in fact approached Dr. Friend and asked if he would use Dr. Pearson in Madison, Wisconsin. Why, if plaintiff was so needed in Madison, was his name not included on the list of possible members of the Madison staff?
4. Was plaintiff transferred to Madison "as quickly as possible,” prior to the establishment of the laboratory at Madison, and prior to the appointment of Dr. Friend as its director?
Another cause of action in dispute in the case is the issue of overtime. It seems that the agency has all but conceded that plaintiff is entitled to some overtime, at least to the *979 extent of some 12 hours per week. This issue has yet to be resolved. Further, is plaintiff entitled to' any overtime beyond this 12-hour limit? This too should be determined.
Without examining this case in depth, questions of plaintiffs first amendment rights need to be resolved. Did Dr. Pearson have a right to challenge his transfer before an administrative board? Did the hearing officer refuse to subpoena several key witnesses?
What is the proper burden of proof? Is plaintiff entitled to overtime? The questions raised in this order, on the record in its present state, are not intended to restrict the inquiries of the parties at trial, nor are they intended to restrict the scope of the trial judge’s findings of fact.
it is therefore ordered, upon consideration of the parties’ submissions, and after oral argument, that defendant’s motion for summary judgment is denied, and the case is remanded to the trial division for further proceedings.

 See Mt. Healthy City School Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977); Perry v. Sindermann, 408 U.S. 593 (1972); Pickering v. Board of Educ., 391 U.S. 563 (1968); see also Mazaleski v. Treusdell, 562 F. 2d 701 (D.C. Cir. 1977).

 See cases cited note 1, supra.